# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

KEITH STOREY, as executor of )
the Estate of Valerie Storey and )
Executor of the Estate of Kenneth )
Cartee, )
                                 )
      Plaintiff, )
                                 )
v. )               CV415-149
                                 )
EFFINGHAM COUNTY, *et al.*, )
                                 )
      Defendants. )

## ORDER

Plaintiff Keith Storey, in his various executory capacities, moves the Court to sanction several of the defendants[1] by striking their respective answers and entering a default judgment against them, for spoliation of video evidence that he believes would prove his case. *See* doc. 172. Defendants oppose. *See* doc. 178 at 4.

---

[1] The defendants allegedly subject to sanction for the destruction of evidence are (1) the "County" defendants the Effingham County Board of Commissioners, Effingham County, Sheriff Jimmie McDuffie, and Jail Captain Robert L. Brown, and (2) the "individual" defendants Deputy Ashby Lee Zydonyk, Corporal Bryan Shearouse, Jailer Cora Mae Gains, Jailer Dorothy Hopf, Jailer Garett Buckles, Jailer Johnny Reinhart, Sergeant Layonya Cooper, Jailer Corporal Leslie Minor, Officer Paul Davis, Deputy Ryan Casey Williams, and Jail Officer Tiffany Tisby. Doc. 172 at 1-2.

## I.    BACKGROUND

Storey pursues this civil rights action to recover for injuries suffered by the decedent, Kenneth Cartee, while in the custody of Effingham County Jail.  *See* doc. 172 at 2-7; doc. 178 at 2.[2]  After threatening to harm himself and his daughter on the morning of September 9, 2012, Cartee was taken to Effingham County Hospital by a Sheriff's Department Officer for mental examination.  Doc. 172 at 2.  At the hospital, he was involved in an altercation with the Officer.  *Id.* at 2-3.  In order to subdue Cartee, the officer "placed his knee between Cartee's shoulder and neck."  *Id.* at 3.

Cartee was then arrested for felony obstruction and transported to Effingham County Jail, where he was involved in a second altercation after refusing to comply with jail staff's instructions.  *Id.* at 3-4.  He was tased and strapped, naked, for several hours, in a "restraint chair."  *Id.* Again combative when released from the chair (to take him back to the hospital), Cartee was thrown to the ground, hogtied, and tased once more.  *Id.* at 4-5.  At the hospital, he was sedated and treated for several

---

[2]   Since the facts of Cartee's injury are not directly relevant to the present motion, the Court relies on plaintiff's account.  That reliance should not be construed as an endorsement of the merits of plaintiff's claims.

days before being transported to "Georgia Regional" for mental health treatment. *Id.* at 5. He complained for the first time of having difficulty walking when he was released, but was able to walk unassisted approximately 35-40 feet to get into the police transport cruiser. *Id.* at 6.

After returning to the Jail, Cartee again complained he could not walk. Doc. 172 at 6. When officers couldn't cajole him into walking, once again the taser appeared and was used one to three times (the officer doesn't remember). *Id.* Cartee was put in a wheelchair at that point, and escorted to booking. *Id.* Two days later, after officers tired of helping Cartee go to the bathroom -- as he still could not walk -- he was taken back to Effingham Hospital and diagnosed with renal failure, as well as several broken ribs, a cervical spinal cord injury and a T11 vertebral facture, sepsis, severe dehydration, and several cuts, bruises, and sores. *Id.*; *see also* doc. 172, Exh. O at 66-67; doc. 72 at ¶ 54. Upon being informed of Cartee's renal failure (it is unclear whether the other various diagnoses were also communicated) Captain Brown released Cartee on his own recognizance. Doc. 172 at 7; *see also* doc. 172, Exh. O at 80-81.

At the time of these events, Effingham County Jail had a

surveillance system set up with cameras throughout the facility, including two video cameras in the sally port, cameras at the booking area, a camera in each holding cell, a camera from booking down the hallway, cameras in each of the big cell blocks, and a camera that captured at least part of one of the two isolation cells.  Doc. 172 at 7; *see* doc. 172, Exh. P at 56-69.  The video records are retained in a centralized storage for at least 14 and up to 30 days, *id.* at 66-69, and it was the policy of the Jail to retain a video when there were disciplinary issues, allegations of wrongdoing, a use of force by staff, or an investigation was started (for any reason) before the video had been routinely destroyed, *id.* at 71-73.  Also, whenever the safety was flipped off of a taser, a video was automatically taken -- akin to a police body camera video.  Doc. 172, Exh. E at 14-84.

Here, no video taken during Cartee's time at Effingham County Jail -- from the first when he was (1) booked, tased, and strapped in a restraint chair, (2) cuffed, put in leg irons, and then tased a second time, (3) tased a third (to perhaps a fifth) time and wheeled to booking, to the end when (4) he was finally wheeled to the hospital for renal failure -- was preserved, neither the jail's routine surveillance video nor the

automatic taser footage. Apparently, defendants didn't know they should suspend their routine video-destruction policy to preserve that video footage, since they didn't know "that Cartee sustained any injury at the Jail," doc. 178 at 3 -- despite, it bears repeating, multiple physical altercations, tasings, Cartee's own declarations that he was going to "sue," and being discharged to the hospital for physical injury. Doc. 172 at 2-7; doc. 199 at 3; *see also* doc. 172, Exh. A at 226. Plaintiff asks that the Court strike defendants' Answers and enter default judgments against them or order an adverse jury instruction as a sanction for the destruction of the videos. Doc. 172.

## II.  ANALYSIS

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1377 (S.D. Ga. 2008). The Court has "broad discretion" to impose sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp*., 427 F.3d 939, 944 (11th Cir. 2005). Spoliation sanctions may include dismissal, exclusion of testimony, or an

instruction to the jury to presume that the evidence would have been unfavorable to the spoliator. Fed. R. Civ. P. 37(e). The Court examines "the extent of the prejudice caused by the spoliation (based on the importance of the evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." *Oil Equip. Co. v. Modern Welding Co.*, 661 F. App'x 646, 652 (11th Cir. 2016).

## A. Defendants Without Possession, Custody, or Control of the Video Evidence

As an initial matter, spoliation sanctions are only available against the party who had possession or control of the missing evidence. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) ("it is essential that the evidence in question be within the party's control.") (cite omitted), *cited in Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015) ("For a spoliation sanction to apply, it is essential that the evidence in question be within the party's control, that is, the party actually destroyed or was privy to the destruction of the evidence.").

Storey has not articulated any connection between the majority of the defendants and the destruction of the evidence. *See* docs. 172 & 199. Defendants point out, and Storey cites nothing to contradict, that "there is no evidence that any Effingham Defendant *other than the Sheriff and*

*Defendant [Jail Captain Robert] Brown* had the authority to preserve any of the video at issue." Doc. 178 at 4 (italics added). In fact, nothing in plaintiff's motion even explains their inclusion in the motion for sanctions to begin with: none of the individuals is even specifically mentioned, much less directly accused of spoliation.

Accordingly, regardless of whether spoliation occurred, Storey is not entitled to sanctions against the individual Effingham defendants, who could have done nothing to prevent or spur the destruction of these videos regardless of their own awareness of their importance. His motion (doc. 172) is thus **DENIED in part,** as to the individual Effingham defendants: Deputy Ashby Lee Zydonyk, Corporal Bryan Shearouse, Jailer Cora Mae Gains, Jailer Dorothy Hopf, Jailer Garett Buckles, Jailer Johnny Reinhart, Sergeant Layonya Cooper, Jailer Corporal Leslie Minor, Officer Paul Davis, Deputy Ryan Casey Williams, and Jail Officer Tiffany Tisby. *C.f. Wilder v. Rockdale Cty.*, 2015 WL 1724596 at * 3 (N.D. Ga. April 15, 2015) (sanctions were not appropriate against a jail's health care provider for the destruction of a jail surveillance video because "[i]t is not clear what [the provider] could have done to get [the county] to preserve video[, and] there [was] no

7

evidence that [the provider] played any role in deleting video footage.");

*Sentry Select Ins. Co. v. Treadwell*, 734 S.E.2d 818, 848 (Ga. Ct. App. 2012) ("[i]t is axiomatic that in order for there to be spoliation, the evidence in question must have existed and been in the control of a party.").[3]

## B. Defendants With Possession, Custody, or Control of the Video Evidence

As to the County defendants, those who arguably had control over the video evidence and the video retention policy (*i.e.*, the Effingham County Board of Commissioners, Effingham County, Sheriff Jimmie McDuffie, and Jail Captain Robert L. Brown), the analysis becomes more complicated. The text of Rule 37(e) establishes a multi-step analysis that courts must apply to determine if sanctions (or curative measures) are appropriate. First, some electronically stored information (ESI) must have been "lost." *Id.* Second, that information (or evidence) must be of the sort that "should have been preserved in the anticipation or conduct of litigation." *Id.* Third, the evidence must have been lost "because a

---

[3] The Eleventh Circuit has discussed and relied on Georgia state law in spoliation cases, even though federal law applies to the issue of spoliation sanctions, because "Georgia state law is wholly consistent with federal spoliation principles." *Flury*, 427 F.3d at 944.

party failed to take reasonable steps to preserve it." *Id.* Fourth, the court must find that the evidence "cannot be restored or replaced through additional discovery." *Id.* Further, "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." *Id.* Here, there's no debate that the surveillance and taser videos are ESI, that they're the type of relevant evidence that ought to have been preserved, or that they have been irretrievably "lost." The only debate is whether the County defendants failed to prevent that loss despite a duty to preserve the videos in anticipation of litigation. *See* docs. 172 & 178.

Defendants contend that they had no reason to suspect litigation was imminent and emphasize that plaintiff's complaint was filed 11 months after Cartee's release -- 10 months after any video footage was destroyed as part of their routine retention policy. Doc. 178 at 3-4. But Cartee was tased, tied up, and roughed up several times, taken to and from the hospital, and was in renal failure and had cracked ribs, vertebrae, and visible cuts and bruises when finally released. Doc. 172 at

7.   He hooted and hollered that he would sue, and despite needing

restraints when first brought to the jail, he had to be wheeled out in a

wheelchair because he could no longer walk. *Id.*; doc. 199 at 2. And

tasings are not so ordinary or commonplace that ensuing litigation --

after 3-5 tasings of one prisoner in mere days -- would be a surprise. *See,*

*e.g.*, doc. 172, Exh. A at 213 (inmates are only tased 2-3 times a year),

Exh. B at 20 (prior to tasing Cartee once (or thrice), Officer Davis had

never tased another inmate and has only tased one since). The Court

cannot fathom a reasonable defendant who would look at those facts and

not catch the strong whiff of impending litigation on the breeze. *See*

*Wiedeman v. Canal Ins. Co.*, 2017 WL 2501753 (N.D. Ga. June 9, 2017);

*Jenkins v. Woody*, 2017 WL 362475 (E.D. Va. Jan. 21, 2017).[4]   The

---

[4]   Constructive notice may be based on a variety of circumstances, including "the
type and extent of the injury; the extent to which fault for the injury is clear;
the potential financial exposure if faced with a finding of liability; the
relationship and course of conduct between the parties, including past
litigation or threatened litigation; and the frequency with which litigation
occurs in similar circumstances." The Court may also consider "not only what
the plaintiff did or did not do after the injury and before the evidence in
question was lost or destroyed, but also what the defendant did or did not do in
response to the injury, including the initiation and extent of any internal
investigation, the reasons for any notification of counsel and insurers, and any
expression by the defendant that it was acting in anticipation of litigation."
However, "the mere fact that someone is injured, without more, is not notice
that the injured party is contemplating litigation sufficient to automatically
trigger the rules of spoliation."
*Wiedeman*, 2017 WL 2501753 at *3 (quoting *Phillips v. Harmon*, 774 S.E. 2d 596, 603

County defendants were on notice that litigation was a distinct possibility, if not very likely, and thus had a duty to preserve the video evidence from their routine document destruction policy. They failed to do so.

Litigants need not, "upon recognizing the threat of litigation, preserve every shred of paper, every e-mail or electronic document, and every backup tape." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N. Y. 2003). However, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Id.* When reasonably anticipating litigation, a party must "preserve what it knows, or reasonably should know, is relevant in the action, . . . [or] is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id.* (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).

Given that the County defendants must have (at least) perceived the *risk* of oncoming litigation, and given that it is undisputed that during his time at the jail Cartee was involved in several altercations

---

(Ga. 2015) (cites omitted).

with officers and tased by more than one officer, any videos of those interactions (either system surveillance or the automatic taser feeds) should have been obviously relevant and likely to be requested during discovery. That video evidence not only constituted relevant evidence that the County defendants had a duty to preserve, but it held the best evidence, both neutral and objective, of just what happened to Cartee. And it was lost because the County defendants failed to take reasonable steps to preserve it. Fed. R. Civ. P. 37(e).

But Rule 37(e) reserves the harshest discovery sanctions, such as adverse inference instructions, dismissals, or default judgments, only for cases in which the court can "fin[d] that the [spoliating] party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). The Court is not convinced that defendants' negligence -- even recklessness -- in allowing the normal video destruction policy to patter away unimpeded rises to the stringent "intent" requirement set forth in the amended Rule 37(e). *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (Rule 37(e)(2) "rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."); *Oil Equip.*

*Co.*, 661 F. App'x at 653 (generally, "bad faith" is found where the spoliator's actions are both responsible for the destruction of the evidence *and* he "fully appreciated the significance of the evidence to the anticipated litigation.") (quote and cite omitted); *In re Delta/Airtran Baggage Fee Antitrust Litigation*, 770 F. Supp. 2d 1299, 1313 (N.D. Ga. 2011) (noting that "[i]in hindsight, Delta should not have waited" to take steps to preserve e-mails, but "without some evidence that Delta's delay was intentional, its failure to act more quickly does not prove bad faith").

Plaintiff is not prejudiced to such an extent that the only remedy is striking the County defendants' Answers or giving an adverse-inference instruction. Plaintiff has been able to fully depose all the relevant witnesses and gather sufficient facts to establish what happened and when to the decedent. *See* doc. 172, Exhs. A-Q; *In re Delta/Airtran*, 770 F. Supp. 2d at 1311 (any prejudice the plaintiffs suffered was mitigated by their opportunity to depose Delta employees who had knowledge of facts related to the plaintiffs' claims). "While videos might have shown the jailers' actions through [Cartee's unhappy stay], the video is not the only evidence available to Plaintiff to help h[im] prove h[is] case . . . . The ability to depose witnesses at least partially mitigates the loss of the

video." *Wilder*, 2015 WL 1724596 at * 4. Plaintiff is simply not prejudiced to such an extent that he is unable to prove his case. *See Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029 at *27 (S.D. Fla. Apr.5, 2011) (if the plaintiff "cannot show that it is 'sufficiently impaired in [its] ability to prove its case,' then it cannot show 'entitlement to an adverse inference based on any destruction of [documents]'"). Storey has simply not demonstrated that the harshest sanctions should be imposed.

But, plaintiff *has* been prejudiced by the County defendants' carelessness. Again, the lost videos deprive plaintiff "of the best and most compelling evidence of what happened" to Cartee and would have offered "the only unbiased and dispassionate depiction of events" that (allegedly) led to Cartee's renal failure, spinal cord injuries and vertebral fracture, broken ribs, and other myriad injuries. *Jenkins*, 2017 WL 362475 at * 18. "[U]pon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1); *see also* Fed. R. Civ. P. 37(e) advisory committee's note (when imposing sanctions under Rule 37(e)(1), "[t]he range of [curative] measures is quite broad" and

"much is entrusted to the court's decision."); *id.* ("[i]n an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than [adverse inference instructions]."); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (any sanction should "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."); *id.* (any sanction imposed should be "designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and[,] (3) restore 'the prejudiced party to the same position he [or she] would have been in absent the wrongful destruction of evidence by the opposing party.'"). Limited sanctions are therefore appropriate to redress this prejudice. *See Jenkins*, 2017 WL 362475 at *18.

## III. CONCLUSION

Given the unique and irreplaceable nature of the evidence, the

Court will order the following sanctions for the County defendants' destruction of, or failure to preserve, the system surveillance and taser videos:

(1)     The Court will tell the jury that the video was not preserved;

(2)     The Court will allow the parties to present evidence and argument at trial regarding the County defendants' destruction of, or failure to preserve, the videos. The jury will be instructed that it may consider that evidence along with all the other evidence in the case, in making its decision; and

(3)     The Court will preclude any evidence or argument that the contents of the video corroborated defendants' version of events.[5]

These sanctions will go some way in restoring Storey to the same position he would have been in had the County defendants abided their duty to preserve. Plaintiff's motion for sanctions is thus **GRANTED in part** as to the County defendants (the Effingham County Board of Commissioners, Effingham County, Sheriff Jimmie McDuffie, and Jail Captain Robert L. Brown).

---

[5]     Again, there will not be any Rule 37(e)(2) adverse inference instruction that the destroyed evidence is *unfavorable* to defendants.

**SO ORDERED**, this __16th__ day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA