IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

KEITH STOREY, as Executor of          *
the Estate of Valerie Storey         *
and Executor of the Estate of        *
Kenneth Cartee,                       *
                                      *
        Plaintiff,                    *
                                      *
        v.                            *        CV 415-149
                                      *
TRANSFORMHEALTHRX, INC; JOHN          *
DOES 1-20; ANISA GRANTHAM,            *
LPC, NCAC; REBECCA RANSOM,            *
LPN; JANE DOES 1-10; JOHN DOES        *
PHYISICIANS 1-5; and ALI              *
RAHIMI, M.D.,                         *
                                      *
        Defendants.                   *
                                      *

---

**O R D E R**

---

Presently pending before the Court are: Defendant Dr. Ali Rahimi's ("Dr. Rahimi") motion to dismiss (Doc. 155); Dr. Rahimi's motion to exclude (Doc. 156); Dr. Rahimi's motion for summary judgment (Doc. 157); Defendants Anisa Grantham, Laura Busbin, Marilyn Spikes, Rebecca Ransom, and Transformhealthrx, Inc's ("THRX") (collectively, the "THRX Defendants") motion to exclude (Doc. 163); Plaintiff's motion in limine (Doc. 165); Plaintiff's motion to exclude (Doc. 168); and the THRX Defendants' motion for summary judgment (Doc. 171).   This Order addresses Dr. Rahimi's pending motions.

# I. BACKGROUND

The Court summarizes the relevant facts and the procedural background thus far.

## A. Procedural Background

On September 8, 2014, Valerie Storey,[1] individually and as executrix of Kenneth Cartee's ("Cartee") estate (the "Estate"), filed a civil rights and tort action against Effingham County Jail, Jimmy McDuffie, Effingham County Sheriff's Department, THRX, Effingham County Board of Commissioners, and 35 John and Jane Does. Storey v. Effingham Cnty. Jail, No. 4:14-cv-194, (Doc. 1, at 1) (S.D. Ga. Sept. 8, 2014).   On November 25, 2014, the Court dismissed the action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).   Id. (Doc. 32, at 1).

On May 20, 2015, Ms. Storey, individually and as executrix of Cartee's Estate, filed this renewal action alleging multiple federal and state law causes of action against several individuals and entities involved in Cartee's incarceration and medical treatment. (Doc. 1.)  On June 22, 2015, Ms. Storey filed her First Amended Complaint.  (Doc. 37.)  On August 30, 2015, Ms. Storey filed her Second Amended Complaint (hereinafter, the "Complaint") — the operative complaint.  (Doc. 72.)  Following Ms. Storey's

---

[1] Ms. Storey is Cartee's biological daughter.  (Doc. 202-1, at 3.)  Even so, William Lamar Newman adopted Ms. Storey in 1981 after marrying Estella Nelson, Ms. Storey's mother.  (Id.)  Cartee's parental rights over Ms. Storey were terminated during this adoption.  (Doc. 157-1, at 5.)

death, her husband, Keith Storey, was substituted as the party plaintiff (hereinafter, "Plaintiff"). (Doc. 137).

The Court previously ruled on several motions for summary judgment. On February 1, 2022, the Court granted Defendants Effingham County, Effingham County Board of Commissioners, and Jimmy McDuffie's motion for summary judgment. (Doc. 254.) On August 31, 2022, the Court granted Defendants Ashby Lee Zydonyk, Bryan Shearouse, Cora Mae Gaines, Dorothy Hopf, Garett Buckles, Johnny Reinhart, Latonya Cooper, Leslie Minor, Paul Davis, Robert L. Brown, and Tiffany Tisby's (collectively, the "ECSO Officers") motion for summary judgment. (Doc. 259.) There have also been several stipulations of dismissal in the case, so the only remaining Defendants are Dr. Rahimi and the THRX Defendants. Additionally, the Court previously found Ms. Storey lacked standing to bring a wrongful death claim in her individual capacity because she was adopted before Cartee's death, so Plaintiff lacks standing to bring a wrongful death claim in his capacity as executor of Ms. Storey's estate. (Id. at 24.) The Court also found Plaintiff has standing to pursue a wrongful death claim in his capacity as executor of Cartee's Estate. (Id.)

**B. Factual Background**

The facts relevant to this Order are as follows. Cartee resided at Woodlands Health and Rehabilitation facility ("Woodlands") in Midway, Georgia from October 22, 2012 until April

3

23, 2013.[2]  (Doc. 157-1, at 1.)[3]  Dr. Rahimi treated Cartee while he was a resident at Woodlands.  (Id.)  When Cartee arrived at Woodlands, he had "an infected left elbow or bursitis, herniation of his C6/C7 discs, incontinence of his bowel and bladder, paraplegia, a methicillin-resistant staph (MRSA) infection, pressure sores, a Stage I to II sacral ulcer, ulcers on both elbows, and ulcers on his heels."  (Id. at 1-2.)  Upon admission, his sacral ulcer was staged but the other ulcers were not described or staged.  (Doc. 202-1, at 8.)  Inna Sheyner's ("Dr. Sheyner") opinion is that Cartee's ulcers at the time of admission would have been expected to heal within six to eight weeks.  (Id. at 9.)

During his stay at Woodlands, Cartee's ulcers progressively worsened and new ulcers developed.  (Doc. 157-1, at 2.)  From his admission until January 10, 2013, Cartee's sacral ulcer went from Stage I or II to Stage IV with tunneling.  (Id.)  Cartee was transferred to the hospital on January 10, 2013 and saw infectious disease Dr. Demicco Barbour who determined Cartee had two potential sources of infection – left side pneumonia or infected ulcers.[4]

---

[2] An outline of the events leading to Cartee's stay at Woodlands can be found in the Court's prior Orders.  (See Docs. 254, 259.)

[3] Dr. Rahimi continually cites to the Complaint in his statement of material facts.  (Doc. 157-1.)  At the motion for summary judgment stage, the Court is not looking at the allegations of the complaint, instead, it looks at "whether the non-moving party has presented sufficient evidence on the claim to get to a jury."  Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1340 (11th Cir. 2022).  The Court cites to facts agreed to by both Parties; thus, citation to the Complaint is irrelevant to the undisputed facts.

[4] There is a discrepancy as to whether Cartee went to Memorial Medical Center ("Memorial") or St. Joseph's; nevertheless, the Parties agree he was treated in

4

(Id. at 2-3; Doc. 202-1, at 9.)  On January 11, 2013, Cartee was diagnosed with sepsis[5]; polymicrobial bacteremia; and a large, infected Stage III decubitus ulcer with devitalized tissue, a foul odor, and tunneling.  (Doc. 157-1, at 3.)  Cartee stayed in the hospital until January 22, 2013 and then returned to Woodlands. (Doc. 202-1, at 9.)  On April 11, 2013, Cartee was admitted to the hospital again with pressure ulcers, exposed bone in his left heel, and a gigantic ulcer from buttocks to sacral full of necrotic tissue and foul odor and tender on palpation.  (Id. at 9-10, 12-13.)  During the second hospital stay, Dr. Ana Concepcion performed an infectious disease consult and determined the source of Cartee's sepsis was his gigantic ulcer.  (Id. at 9-10.)

Dr. Sheyner's expert report states Dr. Rahimi violated the applicable standard of care by not preventing new pressure ulcers from developing on Cartee and failing to provide appropriate wound care on existing pressure ulcers.  (Id. at 10.)  She believes Dr. Rahimi failed to prevent the ulcers from worsening due to his lack of supervision, failure to estimate risk factors, lack of review of his care plan, lack of ordering a higher level of pressure relieving mattress, and failure to order pressure relieving boots,

---

the hospital and diagnosed with sepsis in January 2013.  (Doc. 202-1, at 9-10; Doc. 157-1, at 2-3.)

[5] Sepsis is a serious medical condition that occurs when there is bacteria in the blood stream.  (Doc. 156-1, at 40-41.)  It can cause complications that lead to death, as well as make other disease processes or co-morbidities more complicated.  (Doc. 202-1, at 10.)

which are for a patient who cannot move his legs.   (Id. at 11.) Cartee was scheduled to visit the wound center at St. Joseph's once a month, but Dr. Sheyner believes if he had been taken to the hospital when his ulcers started to get worse, then the outcome would have been different.   (Id.)   Ultimately, she believes Dr. Rahimi should have ordered outpatient care sooner.   (Id. at 13.)

Cartee was discharged from Woodlands on April 23, 2013, went to Riverview nursing home until June, and then opted for hospice care at home.   (Doc. 157-1, at 3; Doc. 202-1, at 13.)   Cartee died on June 25, 2013 because of acute respiratory failure, cardiopulmonary arrest, and adult failure to thrive.   (Doc. 202-1, at 2, 13-14.)

## II. MOTION TO DISMISS

On April 26, 2017, Dr. Rahimi filed a motion to dismiss, moving the Court to dismiss the state law malpractice claim against him because it does not arise out of the same case or controversy as the federal claims.   (Doc. 155, at 1.)   Dr. Rahimi requests the Court decline to exercise supplemental or pendent jurisdiction over the state law claim.   (Id.)   In response, Plaintiff argues "the allegations of medical malpractice against [Dr.] Rahimi for failure to properly treat ulcers, and the allegations of failure to provide medical care to Cartee, also with regard to Cartee's ulcers, among other conditions, certainly involve similar

6

occurrences and facts." (Doc. 200, at 5.) Dr. Rahimi replied in support of his motion, again arguing there is no common nucleus of operative fact. (Doc. 226, at 1.) The Court addresses the Parties' arguments below.

## A. Legal Standard

Under 28 U.S.C. § 1367(a), district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."[6] Ameritox, Ltd. v. Millennium Lab'ys, Inc., 803 F.3d 518, 530 (11th Cir. 2015) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[A] federal court's power to hear pendent state-law claims exists wherever a distinct claim arises under federal law, and 'the relationship between that [distinct] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" Id. at 531 (alterations in original) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)). However, supplemental

---

[6] Supplemental jurisdiction is also called pendent jurisdiction. Ameritox, 803 F.3d at 530 (citation omitted).

7

jurisdiction "is a doctrine of discretion, not of plaintiff's right, and should be exercised only when doing so would promote judicial economy, convenience and fairness to litigants." Id. (quotation marks and citation omitted).

The Court must determine whether the state law claim is so related to the federal claims "that they form part of the same case or controversy." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996) (quoting 28 U.S.C. § 1367(a)). To make this determination, the Court looks "to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Id. (citation omitted). This is often called the common nucleus of operative fact standard. Regenicin, Inc. v. Lonza Walkersville, Inc., 997 F. Supp. 2d 1304, 1309 (N.D. Ga. 2014) (citing Lucero v. Trosch, 121 F.3d 591, 597 (11th Cir. 1997).

**B. Discussion**

Plaintiff filed the Complaint in this Court based on 28 U.S.C. §§ 1343, 1367; 42 U.S.C. § 1983; and the Fourteenth Amendment of the Constitution. (Doc. 72, at 5.) The Complaint states "[t]his case is brought to vindicate . . . Cartee's federal constitutional rights and to redress tortious conduct by the Defendants under Georgia law." (Id.) The Parties agree the above-stated case law on supplemental jurisdiction controls this analysis. (Doc. 200, at 4.) However, the Parties disagree as to the application of the law to the facts.

Dr. Rahimi moves to dismiss the state law medical malpractice claim because it does not arise from the same facts and does not involve similar occurrences, witnesses, or evidence as the claims against the THRX Defendants. (Doc. 155, at 9.) The federal claims that serve as the basis of Plaintiff's Complaint are brought under 42 U.S.C. § 1983 and allege deliberate indifference to Cartee's medical needs, in violation of the Fourteenth Amendment. (Doc. 72, at 22.) Plaintiff argues Defendants failed to provide Cartee adequate medical care; prevented him from getting needed medical treatment; provided grossly deficient medical care that endangered Cartee's health and well-being; failed to train, supervise, or implement policies at the Effingham County Jail to assure Cartee received medical care; and the lack of care demonstrated a lack of regard to Cartee's right to be free from unnecessary and unlawful bodily harm or threats. (Id. at 22-25.) Plaintiff alleges these actions and/or omissions were negligent and/or reckless and/or intentional and demonstrated a deliberate indifference to Cartee's rights. (Id. at 25.) Plaintiff brings state law claims against both the THRX Defendants and Dr. Rahimi. (Id. at 25-45.) Relevant to the motion to dismiss is the medical malpractice claim against Dr. Rahimi, Count III.[7] (Id. at 30-45.) Plaintiff alleges Dr. Rahimi was the physician directly responsible for Cartee's care

---

[7] Originally, Plaintiff brought Count III against Dr. Rahimi and Woodlands; however, based on a stipulation of dismissal, Woodlands is no longer a party to this suit. (Doc. 252.)

during his stay at Woodlands from October 22, 2012 to April 23, 2013. (Id. at 30.)  Cartee's open pressure ulcers were not assessed upon his admission to Woodlands or during his stay despite Dr. Rahimi knowing about the preexisting conditions.  (Id.) Plaintiff alleges Dr. Rahimi, charged with care and treatment of Cartee during his stay at Woodlands, breached the standard of care exercised by members of the medical profession generally by failing to properly treat Cartee, failing to prevent additional ulcers, and allowing his ulcers to worsen. (Id. at 34-42.)  Based on this, Plaintiff alleges Dr. Rahimi caused progression of Cartee's conditions to the point of no recovery, directly contributing to his premature and wrongful death, which could have been avoided if Dr. Rahimi exercised the appropriate standard of care.  (Id. at 42-44.)

Dr. Rahimi moves to dismiss this claim because it involves different elements of proof and does not stem from the common nucleus of operative fact as the federal claims, thus requiring different witnesses and evidence.  (Doc. 155, at 13.)  Dr. Rahimi argues there may be overlapping evidence on causation and damages, but this alone is not enough to confer supplemental jurisdiction. (Id. at 18 (citations omitted).)  Dr. Rahimi asserts the Court should decline to exercise supplemental jurisdiction because there was a substantial temporal and geographical break between the claims asserted against the THRX Defendants and the claim against

him.  (Id.)  He also argues the state law medical malpractice claim will require expert testimony and an analysis of the care and treatment Cartee received at Woodlands, leading to a complex trial. (Id. at 19-20.)  Dr. Rahimi believes these complexities, along with the danger of confusion and prejudice trying the state and federal claims together, should lead the Court to dismiss the claim against him.  (Id. at 20-21.)

In response to the motion to dismiss, Plaintiff argues the allegations against Dr. Rahimi arise out of the same case or controversy as the federal claims against the Effingham County and THRX Defendants.[8]  (Doc. 200, at 4.)  He argues the medical malpractice allegations were only several weeks after the events involving the THRX Defendants, and the "sequence of events led to, and was the legal cause of, the death of [Cartee] due to a condition [Defendants] failed to address."  (Id. at 5, 8.)  Furthermore, Plaintiff argues the THRX Defendants are original tortfeasors, making them potentially liable for damages resulting from injuries caused by them but also by treatment provided by Dr. Rahimi.  (Id. at 8.)  Dr. Rahimi replied to Plaintiff, arguing the claims against the THRX Defendants pertain to "access to medical care" rather than "treatment and prevention of ulcers," illustrating the claims do not arise form a common nucleus of operative fact.  (Doc. 226,

---

[8] The Court previously granted the Effingham County Defendants' motion for summary judgment; thus, they are no longer Parties to the suit.  (Doc. 254.)

at 3.)   He again argues the overlap of damages does not automatically confer supplemental jurisdiction, separate trials would not result in the duplication of efforts by the Parties, and the danger of jury confusion is a legitimate concern.  (Id. at 4-6.)

The Court finds the exercise of supplemental jurisdiction over Plaintiff's state law medical malpractice claim against Dr. Rahimi is warranted.   While recognizing the distinguishable characteristics between Cartee's treatment while incarcerated and his treatment living at Woodlands after incarceration, the series of events is so closely intertwined it falls into the category of a common nucleus of operative fact.   It is hard to tell the story of Cartee's medical decline without including both portions of the story, and the Court knows careful jury instructions and explanation can eliminate any potential jury confusion regarding liability and responsibility.   See Eghnayem v. Bos. Sci. Corp., 873 F.3d 1304, 1313-14 (11th Cir. 2017) ("[T]he risks of prejudice and confusion . . . can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims . . . are submitted to the jury for deliberation." (citation omitted)).   The Court finds that keeping the medical malpractice claim against Dr. Rahimi a part of this litigation will promote judicial economy and ensure a

consolidated and final outcome for all Parties.  For these reasons, Dr. Rahimi's motion to dismiss (Doc. 155) is **DENIED**.

### III. DR. RAHIMI'S MOTION TO EXCLUDE

The Court now turns to Dr. Rahimi's motion to exclude Dr. Sheyner's sepsis and causation opinions.  (Doc. 156.)  Dr. Rahimi moves, pursuant to Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), to exclude Dr. Sheyner's opinions because she used a differential diagnosis analysis and failed to rule out other possible causes of Cartee's sepsis, worsening ulcers, and decline.  (<u>Id.</u> at 7-10.)  Thus, Dr. Rahimi argues Dr. Sheyner's causation opinions should be excluded, and she should be precluded from testifying that Dr. Rahimi proximately caused or contributed to Cartee's worsening ulcers, declining health, and death.  (<u>Id.</u> at 21.)

In response, Plaintiff argues Dr. Sheyner testified that generally several conditions can cause worsening in pressure ulcers; however, she ruled those out and determined none of those applied.  (Doc. 176, at 6-7, 16.)  Plaintiff asserts "Dr. Sheyner explained how it was impossible for there to be another cause to Cartee's worsening pressure sores without [Dr.] Rahimi's failure to meet the standard of care by failing to provide adequate wound care to Cartee."[9]  (<u>Id.</u> at 15.)  Dr. Rahimi replied, arguing Dr.

---

[9] The Court notes Plaintiff makes many conclusory arguments in his response to Dr. Rahimi's motion to exclude and fails to cite to any place in the record to tie his arguments to the testimony of Dr. Sheyner.  (<u>See</u> Doc. 176, at 15.)

Sheyner cannot assume he was negligent simply because Cartee's wounds did not heal. (Doc. 194, at 4.) He believes her opinions are not valid because she did not "rule out" the alterative potential causes with valid scientific methods and procedures. (Id. at 4-5 (citation omitted).) Dr. Rahimi is moving to exclude Dr. Sheyner's causation testimony on the basis of reliability. (Id. at 6-7.)

Dr. Sheyner's expert report states she reviewed records from Woodlands, partial records from Memorial, partial records from St. Joseph's hospital, and Cartee's death certificate. (Doc. 94-1, at 2.) Dr. Sheyner's opinion is that Dr. Rahimi breached the standard of care "by failing to recognize risk factors for pressure ulcer development and progression" in Cartee, as an immobile patient. (Id. at 8.) She believes Dr. Rahimi's failure to assess Cartee's new pressure ulcers and take action caused progression and infection in Cartee's ulcers and led to "no hope for recovery." (Id.) It is Dr. Sheyner's causation opinion that:

> more likely than not, [Cartee] would not have developed progression of his pressure ulcers to terminal stage IV pressure ulcers with exposed bones and complications from his pressure ulcers, such as sepsis, severe pain and emotional distress and suffering, which directly contributed to his death[,] if the reasonable standards of care applicable to . . . Dr. Rahimi had been complied with.

(Id. at 9-10.) The Court addresses the Parties' arguments below.

## A. Legal Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"As the Supreme Court recognized in [Daubert], Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of [expert] testimony." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) (citation omitted). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999) (citation omitted).

The Eleventh Circuit has explained that district courts are to engage in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. Quiet Tech., 326 F.3d at 1340. Specifically, the Court must consider whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions

> is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1340-41 (citations omitted).  Here, Dr. Rahimi is only moving to exclude based on reliability.  (See Doc. 156.)

The testifying expert's opinions must be reliable.  In Daubert, the Supreme Court directed district courts faced with the proffer of expert testimony to conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  509 U.S. at 592-93.  Courts should consider four factors: (1) whether the theory or technique can be tested, (2) whether it has been subject to peer review, (3) whether the technique has a known or potential rate of error, and (4) whether the theory has attained general acceptance in the relevant community.  Id. at 593-94. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."  United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted).  For example, experience-based experts need not satisfy the factors set forth in Daubert. See United States v. Valdes, 681 F. App'x 874, 881 (11th Cir. 2017) (affirming admission of testimony from expert identifying firearms

16

based on years of experience working with firearms).  However, "[t]he inquiry is no less exacting where the expert 'witness is relying solely on experience' rather than scientific methodology." Summit at Paces, LLC v. RBC Bank, No. 1:09-cv-03504, 2012 WL 13076793, at *2 (N.D. Ga. May 22, 2012) (quoting FED. R. EVID. 702 advisory committee's notes to 2000 amendment).  Bearing in mind the diversity of expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). "[W]hether the proposed testimony is scientifically correct is not a consideration for this court, but only whether or not the expert's testimony, based on scientific principles and methodology, is reliable." In re Chantix Prods. Liab. Litig., 889 F. Supp. 2d 1272, 1280 (N.D. Ala. 2012) (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999)).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 1282 (citation omitted).

Regardless of the specific factors considered, "[p]roposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590.  In most cases, "[t]he expert's testimony must be grounded in an

17

accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." FED. R. EVID. 702 advisory committee's notes to 2000 amendment. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1113 (11th Cir. 2005). Thus, "if the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation omitted) (alterations adopted).

**B. Discussion**

Dr. Rahimi argues Dr. Sheyner's causation testimony should be excluded based on reliability because the "differential diagnosis" used was improperly done since Dr. Sheyner did not "rule out" other potential causes of Cartee's death. (Doc. 156, at 7-10.) In a conclusory fashion, Plaintiff argues Dr. Sheyner did in fact rule out other possible sources of sepsis and determined Dr. Rahimi's failure to meet the standard of care caused Cartee's worsening pressure sores. (Doc. 176, at 15.)

"Differential diagnosis 'is accomplished by determining the possible causes for the patient's symptoms and then eliminating

each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.'" Guinn v. AstraZeneca Pharms. LP, 602 F.3d 1245, 1253 (11th Cir. 2010) (citations omitted).  To be reliable, the process does not have to rule out *all* possible alternative causes, but "it must at least consider other factors that could have been the sole cause of the plaintiff's injury." Id.  "[A]n expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient." McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1253 (11th Cir. 2005).  "[A] differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." Guinn, 602 F.3d at 1253 (citations and internal quotation marks omitted).  "[A]n expert must provide a reasonable explanation as to why he or she has concluded that any alternative cause suggested by the defense was not the sole cause of the plaintiff's injury." Id. (citations and quotation marks omitted and alterations adopted).  In other words, "an expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation." Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1197 (11th Cir. 2010) (citation and quotation marks omitted).  "A district court is justified in excluding evidence if

an expert utterly fails . . . to offer an explanation for why the proffered alternative cause was ruled out." Id. (citations and quotation marks omitted and alteration in original).

Based on these principles, the Court finds Dr. Sheyner's causation opinion should be excluded. First, in her deposition, Dr. Sheyner admits she only reviewed "partial documents." (Doc. 156-1, at 120.) The Court is unaware which documents were missing from her review, but this is concerning to the Court as it is hard to develop a reliable medical opinion without all the information. Furthermore, in her deposition, Dr. Sheyner named several conditions that *could* affect a patient's ability to heal pressure ulcers. (Id. at 41-54.) Despite her recognition of these possibilities, she at no point ruled out other potential causes to reach her conclusion that Dr. Rahimi's negligence caused Cartee's demise. In fact, Dr. Sheyner admitted she could not rule out other sources of Cartee's sepsis because she did not have enough information to do so. (Id. at 120.) When asked if she could rule out other sources of sepsis, Dr. Sheyner replied: "Based on documents that I reviewed, and I have mentioned to you I was able to review partial documents, I did not see any other sources . . . I was able to rule out or rule in. No, I don't have enough information to say that." (Id.) When asked to clarify, she stated she had enough information from consultants to rule in Dr. Rahimi's actions but based on the information she had, she could not rule out other sources. (Id.) As explained above, "an expert must

provide a reasonable explanation as to why he or she has concluded that any alternative cause suggested by the defense was not the sole cause of the plaintiff's injury." Guinn, 602 F.3d at 1253 (citations and quotation marks omitted and alterations adopted). Dr. Sheyner explicitly stated she could not rule out other sources and provides no justification aside from the fact she did not have enough information. (Doc. 156-1, at 120.) Based on this, the Court finds Dr. Sheyner's differential diagnosis is not reliable.

Dr. Sheyner's expert report states: "Dr. Rahimi's negligence . . . resulted in ischemic pressure, wound infection and sepsis, which caused the development and progression of the pressure ulcers." (Doc. 94-1, at 9.) She then concludes that if the proper precautions were taken by Dr. Rahimi, it is more likely than not that progression from the ulcers to the terminal infection with sepsis could have been avoided. (Id.) She believes it is more likely than not that Cartee would not have developed such severe ulcers and complications, such as sepsis, had Dr. Rahimi complied with the standards of care. (Id. at 9-10.) However, if Dr. Sheyner cannot determine the cause of the sepsis, it is unreliable to take her opinion that Dr. Rahimi's negligence caused Cartee to reach such a serious condition. Dr. Sheyner, as an expert, was required to explain why she rejected other theories or causes of Cartee's sepsis using scientific methods and procedures and provide more than just subjective beliefs or speculation. Hendrix, 609 F.3d at 1197. She failed to do so, and thus the Court finds

Dr. Sheyner's causation testimony on Cartee's sepsis to be unreliable. Based on the foregoing, the Court **GRANTS** Dr. Rahimi's motion to exclude the sepsis and causation opinions of Dr. Sheyner. (Doc. 156.)   The Court now turns to Dr. Rahimi's motion for summary judgment. (Doc. 157.)

## IV. MOTION FOR SUMMARY JUDGMENT

Plaintiff asserts a medical malpractice claim against Dr. Rahimi, Count III. (Doc. 72, at 30-44.)   Plaintiff alleges Dr. Rahimi breached the standard of care by: failing to properly treat Cartee's pressure ulcers; failing to prevent new ulcers from forming; allowing his ulcers to worsen; failing to recognize the risk for ulcer development in the immobile paraplegic patient with urinary and bowel incontinence; failing to provide appropriate preventive measures; failing to reposition Cartee every two hours to prevent pressure ulcer formation; failing to monitor the change in Cartee's condition and provide directions to Woodlands on how to treat him; failing to properly assess the pressure ulcers during Cartee's admission or re-admission; failing to take timely interventions in wound care and pressure relieving measures; and failing to examine Cartee. (Id. at 38-43.)   Based on these failures, Plaintiff alleges Dr. Rahimi caused: the progression of Cartee's pressure ulcers to Stage IV infected ulcers with exposed bones, osteomyelitis, and no hope for recovery; ischemic pressure, wound infection, and sepsis, which caused the development and

progression of the pressure ulcers; and severe pain, emotional distress, and suffering from Cartee's pressure ulcer complications, which directly contributed to his premature and wrongful death.  (Id. at 44-44.)  Dr. Rahimi moves for summary judgment on this claim on six grounds: (1) Ms. Storey did not have the right to bring a wrongful death claim in her individual capacity because she had been adopted; (2) Keith Storey, as executor of the estate of Ms. Storey, is not a proper party to the case; (3) Ms. Storey did not bring a wrongful death claim on behalf of Cartee's next-of-kin; (4) Cartee's Estate's pain and suffering claim is barred by the two-year medical malpractice statute of limitations ("SOL"); (5) Plaintiff cannot recover punitive damages; and (6) Plaintiff cannot show proximate cause.  (Doc. 157, at 1-4.)  Plaintiff opposes Dr. Rahimi's motion on all grounds.  (Doc. 202.)

Preliminarily, the Court already found Ms. Storey lacked standing to bring a wrongful death claim in her individual capacity because she was adopted before Cartee's death; thus, Plaintiff lacks standing to bring a wrongful death claim in his capacity as executor of Ms. Storey's estate.  (Doc. 259, at 24.)  Thus, Dr. Rahimi's motion is **GRANTED** as it pertains to Ms. Storey's wrongful death claim in her individual capacity.  Furthermore, Dr. Rahimi argues Keith Storey cannot prosecute a claim Ms. Storey never had.  (Doc. 157-2, at 5.)  The Court agrees, and Dr. Rahimi shall be granted summary judgment on any individual capacity claims for

wrongful death pending against him.   The Court addresses the remaining arguments below.

## A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted).  The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).  The Court should not weigh the evidence or determine credibility.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice.  See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

Dr. Rahimi does not bear the burden of proof at trial, and therefore may "satisfy [his] initial burden on summary judgment in either of two ways." McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)). First, he "may simply show that there is an absence of evidence to support [Plaintiff's] case on the particular issue at hand." Id. (citation omitted). If this occurs, Plaintiff "must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. (citation omitted). Or second, Dr. Rahimi may "provide affirmative evidence demonstrating that [Plaintiff] will be unable to prove [his] case at trial." Id. (citation omitted and emphasis in original).

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties

specifically cite and legal arguments they expressly advance.  See id.

In this action, the Clerk of Court provided Plaintiff notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 160.)  For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.  Plaintiff responded to the motion (Doc. 202), and Dr. Rahimi replied in support (Doc. 227).  The time for filing materials has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.  In reaching its conclusions, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## B. Discussion

The Court analyzes Dr. Rahimi's arguments using the same points set forth in his motion for summary judgment.  (Doc. 157.) The Court resolved the first two points above.

### 1. Ms. Storey Did Not Bring a Wrongful Death Claim on Behalf of Cartee's Next-of-Kin

Dr. Rahimi argues Ms. Storey could have brought a wrongful death claim on behalf of Cartee's next-of kin, but she failed to do so.  (Doc. 157-2, at 6-7.)  He argues she erroneously brought a claim in her individual capacity instead of for the next-of-kin and the SOL expired on June 25, 2015 so all wrongful death claims against Dr. Rahimi should be dismissed.  (Id.)  In response,

Plaintiff argues the plaintiffs were originally identified as Valerie Storey, individually and as the Executrix of the Estate of Cartee, thus indicating she brought a claim both individually and for Cartee's next-of-kin. (Doc. 202-2, at 20.)  The Court already interpreted Ms. Storey's claims as brought both individually and as executrix of Cartee's Estate.  (Doc. 259, at 16.)  Thus, Dr. Rahimi's motion is **DENIED** on this ground.

 2. The Estate's Pain and Suffering Claim is Barred by the SOL

 Next, Dr. Rahimi argues Plaintiff failed to bring his pain and suffering claim before the expiration of the two-year SOL. (Doc. 157-2, at 7.)  Plaintiff contends Dr. Rahimi first breached the standard of care on October 22, 2012 when he misdiagnosed Cartee's condition; breached the standard of care again on December 3, 2012 when Cartee developed a new ulcer on his right buttock; and Dr. Rahimi's negligence caused Cartee's ulcers to get progressively worse, resulting in Cartee's hospitalization on January 10, 2013.  (Id. at 8-9.)  Cartee died on June 25, 2013, and Ms. Storey was appointed Executrix of his Estate on November 20, 2013, 148 days later.  (Id. at 10.)  Under Georgia law, the SOL was tolled between the time of Cartee's death and Ms. Storey being appointed to represent the Estate.  (Id. (citing O.C.G.A. § 9-3-32).)  Even with the SOL tolling, Dr. Rahimi argues the SOL on the Estate's pain and suffering claim against him ran on June 7, 2015, and Plaintiff did not add Dr. Rahimi as a Defendant until June 22, 2015.  (Id. at 10-11.)

In response, Plaintiff argues the SOL did not run before he filed his claim against Dr. Rahimi because "[t]he statute of limitations for a wrongful death action emanating from medical malpractice begins to run from the date of death, not from the date of negligent act or omission of the practitioner." (Doc. 202-2, at 21 (citing O.C.G.A. § 9-3-71(a)).) He also argues that even if Dr. Rahimi's medical malpractice did not cause Cartee's death, the Estate's claim was still timely because Dr. Rahimi committed medical malpractice as late as April 10, 2013, and with the tolling of the SOL after Cartee's death, the June 22, 2015 claim was timely filed. (Id. at 21-22.) Dr. Rahimi replied, arguing that Plaintiff believes the SOL was reset whenever Dr. Rahimi committed an act of malpractice or did not start until Dr. Rahimi last treated Cartee; however, Georgia law provides otherwise. (Doc. 227, at 6-7.) Dr. Rahimi asserts the SOL on an Estate's pain and suffering claim commences the first day the decedent suffers an injury rather than on the date of death. (Id. at 7 (citations omitted).) He argues Plaintiff's attempt to use the "continuous treatment" doctrine does not apply to medical malpractice claims in Georgia. (Id. at 9-10.) Thus, Plaintiff's pain and suffering claim against Dr. Rahimi is barred by the two-year SOL. (Id.)

"Under O.C.G.A. § 9-3-71(a), a medical malpractice action must be brought within two years after the date on which an injury or death arising from an alleged negligent or wrongful act or

omission occurred." Deen v. Pounds, 718 S.E.2d 68, 71 (Ga. Ct. App. 2011). "In most misdiagnosis cases, the injury begins immediately upon the misdiagnosis." Kitchens v. Brusman, 633 S.E.2d 585, 586-87 (Ga. Ct. App. 2006) (citation omitted and alterations adopted). If a patient experiences symptoms of the same injury before and after the misdiagnosis, the date of the misdiagnosis is the date of the injury. Id. at 587 (citation omitted). However, if a misdiagnosis results in new or subsequent injuries, the SOL runs from the date of the new injury or the date the symptoms of the new injury manifest to the patient. Id.

> [A] plaintiff's preexisting injury [is] not transformed into a new injury simply because his underlying . . . condition remained untreated notwithstanding the increase in his symptoms . . . . Where . . . the patient's symptoms of his untreated condition worsen over time, for statute of limitation(s) purposes, the injury occurred at the time of the alleged misdiagnosis.

Deen, 718 S.E.2d at 73 (quoting Kaminer v. Canas, 653 S.E.2d 691, 695 (Ga. 2007)).

Dr. Rahimi treated Cartee at Woodlands from October 22, 2012 through April 25, 2013. (Doc. 202-1, at 3.) When he arrived at Woodlands, he had four pressure ulcers and a surgical wound. (Id. at 8.) During his stay at Woodlands, Cartee's ulcers progressively got worse and new ones developed. (Id. at 9.) Cartee was twice transferred to the hospital for treatment of his ulcers and was eventually diagnosed with sepsis, potentially caused by the ulcers. (Id.; Doc. 157-1, at 2-3.) Plaintiff asserts Dr. Rahimi was responsible for Cartee's worsening condition because he did

not properly treat the ulcers; thus, Dr. Rahimi argues the statute
of limitations on this claim for pain and suffering commenced when
Dr. Rahimi first saw Cartee on October 22, 2012.  (Doc. 157-2, at
8-9, 11-12.)  The Parties agree new ulcers formed, but there does
not seem to be evidence on when the new ulcers developed or when
the old ulcers got worse.  (Id. at 9; Doc. 202-2, at 7.)    The
Georgia Court of Appeals explained in Deen that a worsening of
symptoms is legally different from the development of a new and
more deleterious condition.  Deen, 718 S.E.2d at 73 (citations
omitted).  Keeping this in mind, and without clarity as to when
each of Cartee's ulcers developed, or when the preexisting ulcers
got worse, the Court finds there is not enough information to grant
summary judgment on the statute of limitations issue.  Ultimately,
there is a genuine dispute of material fact as to when the statute
of limitations began to run based on Dr. Rahimi's treatment of
Cartee.  Thus, Dr. Rahimi's motion is **DENIED** on this ground.

   3. Plaintiff Cannot Recover Punitive Damages

   Next, Dr. Rahimi argues punitive damages are not recoverable
in a wrongful death action, notwithstanding the intentional or
willful acts of the defendant, and so the next-of-kin's wrongful
death claim should be dismissed.  (Doc. 157-2, at 17.)  Further,
he argues punitive damages would be permissible as part of the
Estate's pain and suffering claim, but since it is barred by the
SOL, this claim also fails.  (Id.)

In response, Plaintiff argues the Estate can recover punitive damages as part of its claim for pain and suffering. (Doc. 202-2, at 22.) However, Plaintiff offers no argument in opposition regarding the next-of-kin's wrongful death claim. Because the Court already found there was a genuine dispute of material fact as to the SOL on the Estate's claim, Dr. Rahimi's motion is denied on that ground. But as to the next-of-kin's claim, the Court agrees with Dr. Rahimi that punitive damages are recoverable only when the defendant's acts are willful, intentional, or done under circumstances that show a conscious indifference to the consequences. (Doc. 157-2, at 17); Roseberry v. Brooks, 461 S.E.2d 262, 268 (Ga. Ct. App. 1995). Since there is no proof of willful, intentional, or conduct that evidences an entire want of care of conscious indifference by Dr. Rahimi, and Plaintiff does not dispute the motion on this basis, Dr. Rahimi's motion for summary judgment is **GRANTED** on this ground. Plaintiff shall be unable to recover punitive damages.

### 4. Plaintiff Cannot Show Proximate Cause

Finally, Dr. Rahimi argues Plaintiff cannot prove proximate cause because Dr. Sheyner, the only expert that offered causation testimony against him, did not provide reliable opinions. (Doc. 157-2, at 21-23.) In response, Plaintiff puts forth the same arguments he gave in opposition to the motion to exclude. (Doc. 202-2, at 22-39.)

"To prove a medical malpractice claim in Georgia, a plaintiff must show: (1) the duty inherent in the health care provider-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained." Knight v. W. Paces Ferry Hosp., Inc., 585 S.E.2d 104, 105 (Ga. Ct. App. 2003) (citing Zwiren v. Thompson, 578 S.E.2d 862, 864 (Ga. 2003)). "In order to establish proximate cause . . . the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." Zwiren, 578 S.E.2d at 865 (citations omitted). As the Court thoroughly explained above, Dr. Sheyner's causation testimony on Cartee's sepsis is unreliable because she failed to conduct a dependable differential diagnosis. Because of this, the Court granted Dr. Rahimi's motion to exclude the sepsis and causation opinions of Dr. Sheyner. Without an expert's testimony linking Dr. Rahimi's alleged actions to Cartee's death and illness, Plaintiff's medical malpractice claim against Dr. Rahimi fails because he cannot prove causation. Thus, Dr. Rahimi is entitled to summary judgment, and his motion (Doc. 157) is **GRANTED** on this ground.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Dr. Rahimi's motion to dismiss (Doc. 155) is **DENIED**, Dr. Rahimi's motion to exclude (Doc. 156) is **GRANTED**, and Dr. Rahimi's motion for summary judgment (Doc. 157) is **GRANTED IN PART and DENIED IN PART**. Based on these findings, the Clerk is **DIRECTED** to **TERMINATE** Dr. Rahimi as a party to this action.

**ORDER ENTERED** at Augusta, Georgia, this _20th_ day of February, 2024.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA